**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3884-23

DONALD J. SURDOVAL,

     Plaintiff-Respondent,

v.

LISA SURDOVAL and
CATHERINE A. SURDOVAL,

     Defendants-Appellants.

_____

Argued December 1, 2025 – Decided April 8, 2026

Before Judges Sabatino, Natali, and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0185-24.

Bruce S. Rosen argued the cause for appellants (Pashman Stein Walder Hayden, PC, attorneys; Bruce S. Rosen, Doris Cheung and Yelena Yukhvid Levine, on the briefs).

Robert Mahoney argued the cause for respondent (Norris McLaughlin PA, attorneys; Robert Mahoney and Kimberly Brunner, on the briefs).

Zachary D. Wellbrock argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Anselmi & Carvelli, LLP, and American Civil Liberties Union of New Jersey, attorneys; Zachary D. Wellbrock, James Harry Oliverio, Jeanne LoCicero, and Ezra D. Rosenberg, on the brief).

Mara Gassmann (Reporters Committee for Freedom of the Press) of the Virginia and District of Columbia bars, admitted pro hac vice, argued the cause for amicus curiae Reporters Committee for Freedom of the Press, New Jersey Press Association, and News/Media Alliance (Ballard Spahr, LLP, Mara Gassmann, and Matthew Singer (Reporters Committee for Freedom of the Press) of the New York and District of Columbia bars, admitted pro hac vice, attorneys; Elizabeth Seidlin-Bernstein, Matthew Singer, Bruce D. Brown, and Mara Gassmann, of counsel and on the brief).

PER CURIAM

Brian Surdoval was found dead in a local park with a gunshot wound to his head that the Bergen County Medical Examiner Office later determined to be self-inflicted. Plaintiff Donald J. Surdoval, Brian's brother, maintains that shortly after his death, his two sisters, defendants Lisa and Catherine A. Surdoval, began an unrelenting campaign of falsely and maliciously telling friends and relatives that Brian did not commit death by suicide but instead was murdered by plaintiff, who they stated also covered up the crime. Defendants allegedly also communicated their beliefs during a meeting with representatives

2

of the Bergen County Prosecutor's Office (BCPO), who they contended failed to properly investigate and prosecute their brother's murder.

Plaintiff filed a two-count complaint sounding in defamation and intentional infliction of emotional distress. Upon receipt of the complaint, defendants immediately moved to dismiss it, relying on the expedited procedures pronounced in the New Jersey Uniform Public Expression Protection Act (UPEPA), N.J.S.A. 2A:53A-49 to -61. The court denied defendants' application in an August 9, 2024 order after concluding plaintiff's complaint did not involve a matter of "public concern" as required by UPEPA and as informed by Senna v. Florimont, 196 N.J. 469, 492 (2008).

Having reviewed the record against the applicable law, we reverse the court's order to the extent it concluded defendants' statements to the BCPO, including their statements regarding the BCPO's purported failure to investigate properly Brian's death, did not involve a matter of public concern and was only pled in the complaint to provide context for plaintiff's other allegations. We remand, however, for the court to provide supplemental factual findings and legal conclusions regarding the other statements defendants purportedly made to third parties in which they accused their brother of murdering Brian, or

A-3884-23

covering up the alleged crime, to determine if they involve a matter of public concern under UPEPA.

I.

We begin with a brief discussion of UPEPA's purpose. UPEPA applies to, among other matters, "a cause of action asserted in a civil action against a person based on the person's . . . exercise of freedom of speech . . . on a matter of public concern," commonly referred to as strategic lawsuits against public participation (SLAPP). N.J.S.A. 2A:53A-50(b). Following the example of several other states concerned with SLAPP suits, New Jersey passed its version of UPEPA in 2023 to "protect residents against frivolous, ill-intentioned lawsuits and insulate them from the financial hardships these cases can produce." Satz v. Starr, 482 N.J. Super. 55, 65 (App. Div. 2025) (quoting Press Release, Off. of the Governor, Governor Murphy Signs Bipartisan Bill Protecting Against Lawsuits Designed to Suppress Free Speech, at 1 (Sept. 7, 2023)); see also LoBiondo v. Schwartz, 199 N.J. 62, 86 (2009) ("[i]n an effort to deal with and deter SLAPP suits, a large number of state legislatures have responded.").

It is important to note that if UPEPA applies to a cause of action, or part of one, it does not serve to dismiss the claim but rather provides litigants with a

two-step procedure for expedited review of a lawsuit's merits and, if appropriate, award costs, attorney's fees, and reasonable litigation expenses. N.J.S.A. 2A:53A-55, -58. At the first step, the court decides whether UPEPA applies. N.J.S.A. 2A:53A-55(a); see also Wunsch v. CTE Republicans for Englewood Cliffs, ___ N.J. Super. ___, ___ (App. Div. 2026) (slip op. at 16) (citing Satz, 482 N.J. Super. at 66). At the second step, the court determines whether the responding party failed to establish a prima facie case as to each essential element of any cause of action in the complaint, or whether the moving party established the complaint fails to state a claim or is entitled to judgment as a matter of law under the summary judgment standard. N.J.S.A. 2A:53A-55(a); see also Wunsch, ___ N.J. Super. at ___ (slip op. at 17). In ruling on an application, the court "may consider the pleadings, the order to show cause [(OTSC)] application and supporting certifications, briefs, any reply or response to the [OTSC], and any evidence that could be considered in ruling on a motion for summary judgment" and may also allow limited discovery in certain circumstances. N.J.S.A. 2A:53A-52(d), -54; see also Wunsch, ___ N.J. Super. at ___ (slip op. at 15).

Plaintiff's complaint alleged defendants "made numerous false and defamatory statements about [him] to third parties" including telling "members

of their extended family" that plaintiff murdered their brother and "covered up the supposed murder."[1] He asserted that, "[d]efendants repeated these false and defamatory statements to others outside of their extended family" and posted them on social media to accuse plaintiff of "destroying" their brother's life.

Plaintiff further maintained defendants repeated these false statements at a meeting with BCPO, in which they "brought two family members with them . . . to whom [d]efendants had repeatedly made the defamatory statements." He contended the BCPO informed defendants that their "statements were contrary to the evidence," yet defendants allegedly "continued to make their false statements to others" and did so with actual malice. In the second count for intentional infliction of emotional distress, he alleged defendants "made their statements intentionally and recklessly" to cause him harm and asserted their conduct was "extreme and outrageous" and "proximately caused [him] to suffer severe emotional distress."

Defendants filed an application to dismiss the complaint by way of an OSTC, as permitted by UPEPA. See N.J.S.A. 2A:53A-51. In support, both

---

[1] Other than the BCPO, plaintiff's complaint does not name the alleged third parties to whom defendants made these allegedly defamatory statements. While the complaint references the two family members to whom the statements were allegedly made, the complaint does not name these family members nor describe their familial relationship to the parties.

A-3884-23

defendants submitted certifications in which they attested they never "accused [plaintiff] of murdering [Brian], or that [plaintiff] covered up any such murder," but rather merely explained the "confusing and concerning incidents," many of which involve plaintiff, surrounding Brian's death.  Notably, two days before receipt of plaintiff's opposing certification, Catherine filed an amended certification "to clarify that statement" and certified she reported to the BCPO "in written submissions my suspicions that [plaintiff] and Brian's wife . . . could have been responsible for Brian's death."

Catherine also discussed approaching the BCPO "on behalf of [her] sister and two cousins . . . to share [their] concerns" regarding the circumstances of their brother's death that, in her view, involved, to some degree, plaintiff. Catherine further certified the BCPO, at the meeting, confirmed "some of the facts presented . . . by us were false and not reflected in their file."

In opposition to defendants' motion, plaintiff certified defendants did, in fact, make defamatory statements regarding his involvement in Brian's alleged murder to third parties, including the BCPO; their two cousins, Kevin Murphy and Chris Rowland; Sister Doris Delotto, a nun "who was an acquaintance" of their deceased brother; and Evan Feather, a client of "Catherine's accounting practice."  In support, plaintiff appended numerous exhibits of those

communications between defendants and third parties, including the BCPO, supporting his contention that defendants repeated their defamatory statements to numerous individuals.

Those exhibits included: (1) Catherine's repeated emails to the BCPO, in which she expressed her suspicions about plaintiff's involvement in Brian's death and her frustration with its failure to investigate; (2) a text from Lisa to Kevin Murphy referring to "Brian's murder" but making no reference to plaintiff's alleged involvement; (3) a text from Lisa referencing an alleged conspiracy to "take Brian down" and calling plaintiff "demonic"[2]; (4) a memorandum prepared by Lisa for the BCPO in which she detailed a chronological order of the alleged conspiracy behind Brian's murder; (5) text messages between plaintiff and his brother; (6) Kevin Murphy's social media post in which he accused plaintiff of murdering his brother and committing other unspecified crimes, and expressed his frustration with the "cops who refused to investigate"; (7) an email from Kevin Murphy allegedly "apologizing for Catherine's behavior" to the BCPO; (8) several social media posts by Catherine making vague and indirect references to the alleged conspiracy to murder Brian; (9) the autopsy and toxicology reports performed on Brian after his death; and

---

[2] The record before us does not make clear to whom the text was sent.

A-3884-23

(10) a letter explaining Lisa's employment at plaintiff's software development company.

After considering the parties' submissions and oral arguments, the court denied defendants' OTSC in an August 9, 2024 order and explained its decision in a written statement of reasons. The court found that UPEPA did not apply because it determined defendants failed "to establish how the speech at issue is a matter of public concern," based on the "content, form, and context" of the complaint, as set forth in Senna, 196 N.J. at 492. To determine whether the allegations in the pleadings constituted a matter of public concern, the court also relied upon FilmOn.com v. Double Verify Inc., 246 Cal. Rptr. 3d 591, 601 (2019) and found plaintiff's "basis for his complaint [were] the defamatory communications defendants made to third parties," specifically Kevin Murphy, Chris Rowland, Sister Doris, and Evan Feather.

The court accepted plaintiff's contention that defendants' statements to the BCPO were "not the subject of this defamation action and the fact that the meeting occurred was pled simply for contextual background." It determined the circumstances surrounding Brian's death, which "may be connected to an issue of public" interest, were not "enough for [UPEPA] to apply." Further, the

A-3884-23

court explained UPEPA's legislative intent supported its conclusion that this matter did not "involve the type of speech the statute was designed to protect."

Before us, defendants argue the court's interpretation and application of UPEPA was in error and assert the matter should be remanded for further proceedings. They specifically contend the court erred in its decision because it "disregarded" plaintiff's complaint's "clear reliance" on allegedly defamatory statements made to the BCPO, even if that reliance was "partial." They argue plaintiff conceded that the statements to the BCPO do, in fact, concern a matter of public concern. In any event, defendants' statements to the BCPO are a matter of public concern and not merely contextual and the matter should have proceeded to the second step of UPEPA's two-step analysis to ensure "prompt resolution and deterrence of [SLAPP] suits."

Defendants also argue the court incorrectly relied upon the standard set forth in FilmOn.com, 246 Cal. Rptr. 3d at 601, to determine whether UPEPA applies. They contend under Senna, 196 N.J. at 496-97, and its "content, form, and context" analysis, that the complaint clearly addresses a matter of public concern, at least in part. Further, because UPEPA "requires uniformity with [other] jurisdictions," defendants cite to several out-of-state cases, notably Mouktabis v. Clackamas Cnty., 327 Or. App. 763 (2023), to support their

argument that statements regarding a potential crime are a matter of public concern. They assert even "mixed" claims of public and private interests, like the matter before us, should proceed to second step of the UPEPA analysis for expedited review and the entire complaint should proceed to the second step of the UPEPA analysis "even if the court decides that part of what was communicated other than to the BCPO was not [a] matter of public concern" because UPEPA applies to an action "or part of the cause of action."

Two amici, the Reporters Committee for Freedom of the Press, New Jersey Press Association, News/Media Alliance (collectively, the Reporter Amici), and the American Civil Liberties Union (ACLU) of New Jersey, filed briefs in substantial support of defendants' positions. They primarily argue UPEPA was meant to be applied broadly in order to dismiss litigation aimed at chilling free speech. They further assert defendants' speech and specifically their allegations that plaintiff killed Brian and covered it up and that the BCPO failed to investigate the purported crime, constitute a matter of public concern.

Further, the Reporter Amici, in addition to relying on Mouktabis, identify several out-of-state cases and assert these cases hold complaints involving reports of criminal activity relate to matters of public concern. (citing Whitelock v. Stewart, 661 S.W.3d 583, 596-98 (Tex. App. 2023) (stating that accusations

that an individual engaged in a criminal offense or is under criminal investigation are matters of public concern); Pryor v. Brignole, 346 Conn. 534, 542 (2023) ("The commission of [a] crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public[.]" (citation omitted)); Cornelius v. The Chronicle, Inc., 209 Vt. 405, 411 (2019) (holding that articles were "connected to a public issue because they concerned public safety, law enforcement activity, possible criminal behavior, and the reporting of arrests")).

For his part, plaintiff argues that the trial court correctly denied defendants' OTSC. He contends the court properly found that portions of the complaint regarding defendants' statements to the BCPO were for context only and maintain those statements did not give rise to any of the substantive allegations in the complaint, and he does not seek relief based upon those statements in any event. He asserts the court properly considered the "content, form, and context of the speech at issue" in reaching its decision and relies on our Supreme Court's decision in W.J.A. v. D.A., 210 N.J. 229, 245 (2012), for the proposition "that simply because the offending speech makes accusations of criminal conduct does not make the matter an issue of public concern."

He argues the court correctly found Brian's death was not a public matter because it was not "newsworthy, subject to public debate, or rose above a private matter amongst those acquainted with the family." Plaintiff also maintains the court did not err in "finding persuasive value in FilmOn.com" because the case "did nothing more than our Supreme Court in Senna or the [United States] Supreme Court in [Snyder v. Phelps, 562 U.S. 443, 452-53 (2011)]." Finally, plaintiff identifies several unpublished out-of-state cases that he asserts support the principle that defamatory statements involving criminal conduct do not necessarily constitute matters of public concern.

II.

We first discuss the relevant standard of review. We review a decision on the interpretation and application of a statute, such as UPEPA, de novo. Pugliese v. State-Operated Sch. Dist. of City of Newark, 454 N.J. Super. 495, 503 (App. Div. 2018); see also Wunsch, ___ N.J. Super. at ___ (slip op. at 12); Satz, 482 N.J. Super. at 62. "When interpreting a statute, [the] aim [is] to effectuate the Legislature's intent, which is best indicated by the statutory text." Keyworth v. CareOne at Madison Ave., 258 N.J. 359, 379 (2024) (citations omitted). "In construing statutory text, 'words and phrases shall be given their generally accepted meaning, unless that meaning is inconsistent with the clear intent of

13

the Legislature or unless the statute provides a different meaning. Words in a statute should not be read in isolation.'" Id. at 379-80 (quoting Shelton v. Restaurant.com, Inc., 214 N.J. 419, 440 (2013)).

Accordingly, courts are to "read the statute[] in [its] entirety and construe 'each part or section . . . in connection with every other part or section to provide a harmonious whole.'" C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459-60 (2014) (omission in original) (quoting State v. Marquez, 202 N.J. 485, 499 (2010)) (internal quotation marks omitted). "If the text's plain meaning is clear and unambiguous, 'we apply the law as written.'" Keyworth, 258 N.J. at 380 (quoting State v. J.V., 242 N.J. 432, 443 (2020) (internal quotation marks omitted)). "Conversely, if the text is ambiguous, 'we may turn to extrinsic evidence, including legislative history to aid our inquiry.'" Ibid. (quoting W.S. v. Hildreth, 252 N.J. 506, 518 (2023)).

Next, we discuss the relevant and additional provisions of UPEPA. As noted, UPEPA applies to:

> a cause of action asserted in a civil action against a person based on the person's:
>
> (1) communication in a legislative, executive, judicial, administrative, or other governmental proceeding;

(2) communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding; or

(3) exercise of the right of freedom of speech or of the press, the right to assembly or petition, or the right of association, guaranteed by the United States Constitution or the New Jersey Constitution, on a matter of public concern.

[N.J.S.A. 2A:53A-50(b) (emphasis added).]

"Not later than [sixty] days after a party is served with a . . . pleading that asserts a cause of action to which [UPEPA] applies . . ., the party may file an application for an [OTSC] . . . to dismiss the cause of action or part of the cause of action." N.J.S.A. 2A:53A-51. "The court shall hear an [OTSC] under [UPEPA] as expeditiously as possible[,]" N.J.S.A. 2A:53A-53(a), and "rule . . . as soon as practicable after a hearing . . . ." N.J.S.A. 2A:53A-56.

As noted, in ruling on defendants' OTSC, the court "may consider the pleadings, the [OTSC] application and supporting certifications, briefs, any reply or response to the [OTSC], and any evidence that could be considered in ruling on a motion for summary judgment." Wunsch, ___ N.J. Super. at ___ (slip op. at 15) (quoting N.J.S.A. 2A:53A-54). On the filing of an OTSC application, the court, with certain exceptions, may stay "all other proceedings" between the parties. N.J.S.A. 2A:53A-52(a)(1); see also Satz, 482 N.J. Super. at

15

64. The court also "may allow limited discovery if a party shows that specific information is necessary to establish whether a party has satisfied or failed to satisfy a burden under [N.J.S.A. 2A:53A-55(a)] and the information is not reasonably available unless discovery is allowed." Wunsch, ___ N.J. Super. at ___ (slip op. at 15) (quoting N.J.S.A. 2A:53A-52(d)).

The court is required to construe UPEPA "broadly . . . to protect the exercise of the right of freedom of speech and of the press, the right to assembly and petition, and the right of association, guaranteed by the United States Constitution or the New Jersey Constitution." N.J.S.A. 2A:53A-59. Additionally, "in applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it." N.J.S.A. 2A:53A-60.

As noted, UPEPA establishes a two-stage process a court must follow "in ruling on an [OTSC.]" N.J.S.A. 2A:53A-55(a). "N.J.S.A. 2A:53A-55(a) sets forth the grounds on which the party filing the [OTSC application] can prevail." Satz, 482 N.J. Super. at 64. Under this provision, the court must first determine whether UPEPA applies to the causes of action alleged. Specifically, that: "(1) the moving party established . . . [UPEPA] applies; [and] (2) the responding party fail[ed] to establish . . . that [UPEPA] does not apply" based on the

16

exceptions enumerated in N.J.S.A. 2A:53A-50(c), none of which are relevant to the matter before us, which neither party disputes. N.J.S.A. 2A:53A-55(a)(1)-(2); Satz, 482 N.J. Super. at 66.

If UPEPA applies, "the court shall dismiss with prejudice a cause of action, or part of a cause of action, if . . . either:"

> (a) the responding party fails to establish a prima facie case as to each essential element of any cause of action in the complaint; or
>
> (b) The moving party establishes that:
>
>> i. The responding party failed to state a cause of action upon which relief can be granted; or
>>
>> ii. There is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the cause of action.
>
> [N.J.S.A. 2A:53A-55(a)(3).]

If the party seeking an OTSC under N.J.S.A. 2A:53A-51 prevails on that application, "the court shall award [to that party] court costs, reasonable attorney's fees, and reasonable litigation expenses related to the [OTSC]." Wunsch, ___ N.J. Super. at ___ (slip op. at 15) (quoting N.J.S.A. 2A:53A-58(1)). If the plaintiff prevails "and the court finds that [OTSC] was frivolous or filed solely with intent to delay the proceeding," then the court "shall award"

17

those fees, costs, and expenses to the plaintiff.  Ibid. (quoting N.J.S.A. 2A:53A-58(2)).

### III.

The first issue before us is whether the court properly concluded that the allegations regarding defendants' statements to the BCPO were "pled simply for contextual background" or rather were "matter of public concern" under UPEPA.  N.J.S.A. 2A:53A-50(b)(3).  We conclude the court erred when it concluded those particular statements as pled constituted mere context and thus were outside of UPEPA's purview.  We are convinced those statements in which defendants allegedly communicated their concerns to a public entity charged with investigating criminal acts, as later illuminated by the motion record to include allegations that the BCPO's failed to investigate properly the purported crime, constitute matters of public concern.

UPEPA does not define a matter of public concern.  New Jersey's UPEPA, however, is based on the 2020 Uniform Public Expression Protection Act as authored by the Uniform Law Commission.  See S. Comm. Statement to S. 8200 ("[UPEPA] is based on the 2020 uniform act drafted and approved by the Uniform Law Commission.").  Indeed, the Uniform Law Commission clarifies the term "matter of public concern," as it appears in the model code, should be

"construed consistently with caselaw of the [United States Supreme Court] and the state's highest court." Uniform Public Expression Protection Act § 2 cmt. 9 (Unif. L. Comm'n 2020).

Both the United States Supreme Court and the New Jersey Supreme Court have held "whether speech is of public or private concern requires [courts] to examine the 'content, form, and context' of that speech." See Snyder, 562 U.S. at 452-53 (citing Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 761 (1985)). To determine when an alleged defamatory statement involves a matter of public interest or concern, our Supreme Court specifically "require[s] a review of the [statement's] content, form, and context . . . as revealed by the whole record [, and includes] . . . consider[ation of] the identity of the speaker and the targeted audience." Senna, 196 N.J. at 492-93

"Content requires [courts] look at [the] nature and importance of the speech" and whether it advances the public's interests or only serves to promote the economic interests of the speaker. W.J.A., 210 N.J. at 244. As such, discussion regarding "political subjects and critiques of the government" will always be protected, as will be speech that concerns "significant risks to public health and safety." Ibid. (citing Dairy Stores, Inc. v. Sentinel Pub. Co., 104 N.J. 125, 144-45 (1986)).

A-3884-23

"Context requires that [courts] look at the identity of the speaker, [their] ability to exercise due care, and the identity of the targeted audience." W.J.A., 210 N.J. at 244. Speech regarding a private dispute, made solely for the benefit of the speaker, would not be considered speech of "public concern." Id. at 245-46; Senna, 196 N.J. at 498 (holding that the defendant's accusations of fraud were intended to drive business away from plaintiff, and were not a matter of public concern or interest). We further note, in W.J.A., 210 N.J. at 245, our Supreme Court held "[w]e have never suggested that such an allegation [of criminal conduct], in itself, vaults the public concern threshold."

We find, and neither party disputes, plaintiff's causes of action, to the extent they rely on defendants' alleged defamatory statements to the BCPO's and its purported failure to investigate, were "based on . . . exercises of the right of freedom of speech . . . on matters of public concerns." N.J.S.A. 2A:53A-50. Accordingly, we conclude the causes of action in plaintiff's complaint were, at least in part, related to a matter of public concern and find UPEPA may apply to the extent that plaintiff's causes of action are based on defendants' statements regarding the BCPO's alleged failure to properly investigate.

We reach this conclusion based on the content, form, and context of the speech, which relate to statements made to a prosecutor's office concerning

serious potential criminal conduct and its alleged failure to investigate such conduct. We find these statements concern matters of public safety and critiques of the government, both of which are well-established public matters. Defendants' statements to the BCPO and its alleged failure to investigate at a minimum serve as a mixed basis for plaintiff's causes of action and thus we reject the court's conclusion that those statements were "pled simply for contextual background." While we note plaintiff contends he no longer relies on defendants' statements to the BCPO or defendants' comments regarding their frustration with the BCPO's investigation. they are consistently referenced throughout the motion record as allegedly repeated to third parties.

For example, Kevin Murphy's social media post, which plaintiff contends supports his allegations that defendants made defamatory statements to third parties, discusses accusations that plaintiff killed his brother and also expresses frustration with the BCPO for failing to investigate. The post also discusses additional potential crimes which plaintiff allegedly committed and confirms that defendants' communications to third parties concern not only allegations of plaintiff's involvement in their brother's murder but also discuss the prosecutor's failure to investigate, a matter which neither party disputes is public. Accordingly, we reverse the court's decision that defendants' statements to the

21

BCPO are pled as merely context and conclude they are a matter of public concern such that UPEPA may apply to the alleged defamatory statements.

If the case was limited to defendants' statements to and regarding the BCPO, we doubt the matter would be before us. Plaintiff's allegations against defendants, however, are more complex and thus our analysis does not end with our conclusion that the BCPO-related statements are a matter of public concern. As noted, plaintiff's allegations, as informed by the motion record, include statements that defendants accused plaintiff of murdering their brother and did so, in part, after the BCPO expressed its disagreement with those statements. As to these statements to private third parties, we remand with instructions for the court to make factual findings and legal conclusions regarding whether these statements involved a matter of public concern. Although we acknowledge that the court's statement of reasons suggested such statements were not of a public concern as contemplated by UPEPA, that analysis was primarily animated by its conclusion defendants' statements to the BCPO were only contextual. We are convinced the better course is for the court in the first instance to conduct a separate <u>Senna</u> analysis under step one of UPEPA as to each of defendant's private statements to third parties in which they accuse their brother of a serious crime and cover-up.

We reject, however, defendants' argument, in which they relied primarily on California cases, that any cause of action involving allegations of a matter of public concern, even if only in part, must proceed to step two, as contrary to UPEPA's plain language. Indeed, N.J.S.A. 2A:53A-55 provides that "the court shall dismiss with prejudice a cause of action, or part of a cause of action," which clearly requires a court to discern which claims are "based on" exercises of the right of freedom of speech on a matter of public concern and which are not, as is the case in the matter before us. (Emphasis added).

Further, as the ACLU of New Jersey argues, a step one analysis requires mixed allegations in the complaint to be parsed to discern what concerns a public matter and what does not, and is consistent with the 2020 Uniform Public Expression Protection Act upon which UPEPA is based. As the amici explains, the Uniform Law Commission explained its model statute "contemplates that in one civil action, a party seeking relief may assert multiple causes of action that invoke different facts and theories for relief." Uniform Public Expression Protection Act § 2 cmt. 5 (Unif. L. Comm'n 2020).

We also reject defendants' and amici's argument that claims involving allegations of criminal conduct are per se matters of public concern. We reject such a conclusion because it promotes a superficial resolution of the public

concern issue and is also contrary to UPEPA which requires such statements to sustain a content, form, and context analysis as established by our Supreme Court in Senna, 196 N.J. at 492.  See also W.J.A., 210 N.J. at 245 ("an allegation [of criminal conduct], in itself, [does not] vault[] the public concern threshold").

Further, Romaine v. Kallinger, 109 N.J. 282 (1988) and Petersen v. Meggitt, 407 N.J. Super. 63 (App. Div. 2009), upon which defendants rely, do not compel a contrary result as they bear no factual similarity to the statements allegedly made by defendants.  As plaintiff correctly notes, unlike the alleged defamatory statements in Romaine and Petersen, defendants' alleged private defamatory statements to third parties do not concern the reporting on the commission of sensationalized crimes or criminal conduct  published in widely-circulation publications like a book or periodical.  See Romaine, 109 N.J. at 286-87; Petersen, 407 N.J. Super. at 77-78.  In any event, defendants' alleged statements to third parties must be viewed through the lens of Senna's holding and analyzed for their content, form, and context first.

To the extent we have not specifically addressed any of the parties' remaining arguments, it is because we have determined they lack sufficient merit to warrant discussion in a written opinion.  See R. 2:11-3(e)(1)(E).

Reversed in part and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3884-23